UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
SHLOMO YEHUDA RECHNITZ,

       *Petitioner/Plaintiff*,

       v.

EPHRAIM KUTNER, JONATHAN KUTNER and
GREYSTONE FUNDING CORP.,

       *Defendants/Respondents*.
--------------------------------X

**MEMORANDUM & ORDER**

20-cv-1607 (KAM) (VMS)

**KIYO A. MATSUMOTO, United States District Judge:**

Currently pending before the court are motions from the three parties requesting various relief.  The petitioner, Shlomo Yehuda Rechnitz ("Petitioner"), has previously moved to confirm an arbitration award, and subsequently moved to confirm the *ex parte* order of attachment in aid of arbitration that this court previously entered in this case.  Defendants Ephraim Kutner and Jonathan Kutner (the "Kutner defendants") have moved to vacate the arbitration award.  Defendant Greystone Funding Corp. ("Greystone") has filed a motion for interpleader deposit, seeking dismissal from the case and an award of attorneys' fees and costs.

For the reasons contained herein, as well as those stated on the record at the hearing held before this court on June 3, 2020, the court GRANTS Petitioner's motion to confirm the arbitration award and an order of attachment in aid of

1

arbitration, DENIES the Kutner defendants' motion to vacate the arbitration award, and GRANTS IN PART Greystone's motion for interpleader deposit.

## Background

### I.   Factual Background

Petitioner alleges that in 2013, he agreed to loan the Kutner defendants money to fund, *inter alia*, their lawsuit against their former employer, Greystone (the "Greystone Lawsuit"), subject to two conditions. (ECF No. 2-2, Declaration of Shlomo Yehuda Rechnitz ("Rechnitz Decl."), ¶ 2.)  First, any recovery from the Greystone Lawsuit would first be used to repay the money loaned by Petitioner. (*Id.*)  Second, Petitioner would receive thirty percent of any profits recovered in the Greystone Lawsuit, after deducting expenses. (*Id.*)  Petitioner claims that he loaned the Kutner defendants more than $3 million to fund the Greystone Lawsuit. (*Id.* ¶ 3.)

In 2018, Petitioner alleges that the parties had several disputes regarding the various loans that Petitioner made to the Kutner defendants. (*Id.* ¶ 5.)  Petitioner and the Kutner defendants agreed to appear before Rabbi Dovid Cohen, a Jewish legal authority recommended by the Kutner defendants, to decide their disputes. (*Id.*)  On August 14, 2018, the parties appeared before Rabbi Cohen. (*Id.* ¶ 6.)  At the meeting, Rabbi Cohen drafted a document, which read, in its entirety:

>  Shlomo Yehuda Rechnitz (SYR) on his own and as a partner in
>  Harborview Capital LLC and Jonathan and Ephraim Kutner
>  (JEK) on their own, and as partners in the above company,
>  have come to me to adjudicate a dispute.  They have agreed
>  to accept my decision.

(ECF No. 1, Complaint and Petition ("Compl."), Ex. 2,

Arbitration Agreement.)  The document was signed by Rabbi Cohen,

Petitioner, and the Kutner defendants, and dated August 14,

2018.  (*Id.*)

        The parties and Rabbi Cohen now agree that this

document constituted their arbitration agreement.  (*See

generally* ECF No. 36-24, Kutner Defendants' Memorandum in

Opposition to Petitioner ("Opp.").)  Petitioner avers that at

the arbitration hearing, he presented evidence of the various

loans he made to the Kutner defendants, including the loan to

fund the Greystone Lawsuit.  (Rechnitz Decl. ¶ 7.)  Petitioner

asserts that the Kutner defendants owed him more than $11

million in principal for all of the various loans.  (*Id.*)  The

record reflects that the Kutner defendants did not dispute that

Petitioner provided them with funding and was entitled to a

return of the money.  (*Id.*)  Petitioner requested interim relief

from Rabbi Cohen: to place in escrow the interest payments the

Kutner defendants received from certain borrowers, to whom the

Kutner defendants loaned some of the money they borrowed from

Petitioner.  (*Id.* ¶ 8.)  Rabbi Cohen granted this request, but

the Kutner defendants allegedly did not comply with the Rabbi's order.  (*Id.*)

On August 21, 2018, Rabbi Yochanan Bechhofer, the Kutner defendants' rabbinic advocate, sent a letter to Rabbi Cohen, which stated:

> The Kutner brothers came into you last week with the understanding that it was to be a mediation and not an arbitration.  They did not question signing the document that was placed before them so as not to hamper the flow of the mediation.  They were surprised by the unannounced appearance of Mr. Rechnitz's CFO, as it was previously agreed that only Mr. Rechnitz would be in attendance.  The goal of the meeting was to mediate in the presence of the Rav and to bring a resolution to the dispute.  However, since matters took a turn and we are now embroiled in an arbitration for which we were not prepared, we request another hearing in front of the Rav in the presence of Mr. Rechnitz and whoever he would like to bring.
>
> At this hearing, we will present all of our evidence, including documents, recordings and witnesses who will fly in to give their testimony.  We are endeavoring to bring this matter to a swift resolution as quickly as possible.

(Compl., Ex. 3, Letter from Bechhofer.)  The Kutner defendants' pending motion now concedes that an arbitration took place before Rabbi Cohen.  (*See generally* Opp.)

On August 22, 2018, Rabbi Cohen responded to Rabbi Bechhofer's letter, and found that the parties had voluntarily agreed to an arbitration.  (Compl., Ex. 4, Letter from Rabbi Cohen.)  Rabbi Cohen's response stated:

> I challenge the statement that there was any hint of coercion to sign an arbitration agreement.  I was not aware of any agreement not to bring the CFO.  Both sides were quite amenable when I asked what they preferred [and] it

> was arbitration. . . .  I have already assured the Kutners
> that we shall all get together before a final decision is
> rendered.

(*Id.*)

In May 2019, the Kutner defendants settled the
Greystone Lawsuit for $8 million.  (Rechnitz Decl. ¶ 3.)  Based
on his loan to the Kutner defendants to fund the Greystone
Lawsuit, Petitioner claimed he was entitled to a total of
$4,399,976 from the settlement, constituting (1) the $3,071,009
that Petitioner loaned the Kutner defendants to fund the
Greystone Lawsuit, and (2) the $1,328,967 that Petitioner should
receive as his share of the post-deduction recovery.  (*Id.*)
Petitioner also asserts that the Kutner defendants owe him an
additional $7.6 million for other loans he advanced to them.
(*Id.*)

The parties engaged in settlement negotiations in an
effort to resolve their disputes amicably without Rabbi Cohen.
(*Id.* ¶ 13.)  The Kutner defendants, in the interim, made no
payments to Petitioner.  (*Id.*)  In February 2020, after "many
months of failed settlement negotiations," Petitioner requested
that Rabbi Cohen summon the Kutner defendants to appear before
him so that they could provide their "evidence, including
documents, recordings and witnesses who will fly in to give
their testimony," as Rabbi Bechhofer said the Kutners intended
to do in August 2018.  (*Id.* ¶ 14.)

It is undisputed that the Kutner defendants did not respond to or cooperate with Rabbi Cohen in scheduling and engaging in further arbitration proceedings to present their evidence.  (*Id.*)  Instead, Rabbi Bechhofer sent another letter to Rabbi Cohen on behalf of the Kutner defendants, which stated:

> On behalf of my clients I wish to bring to the honored Rabbi's attention that the dispute between my clients and Mister Rechnitz for which they appeared before from the honored Rabbi in the summer of 2018 has long since been resolved.
>
> In the fall of 2018, an agreement was reached between the parties (see attached "article 1") that would settle the dispute once and for all. This agreement was not only put in writing in an email that is legally binding but it has already been implemented in good faith and at great expense to my clients.
>
> Amongst the items of the agreement that were implemented already was to pay Mr. Gershon Beigelison at great expense to my clients, which they did already long ago and already paid him at Mr. Rechnitz's request an entire annual salary. The initial dispute has been resolved and the current dispute is over the terms and conditions of an agreement that was wholly agreed to by both sides (see attached "Article 2") and is in stages of implementation already. Should we seek an arbitration from the honored Rabbi, it would require a new arbitration agreement, since it is not the issue for which we signed an arbitration agreement for in the past.

(Rechnitz Decl., Ex. B, Letter from Bechhofer (Second) (emphasis omitted)).  The letter attached "Article 1," a December 2, 2018 email from Ephraim Kutner to Petitioner regarding a possible resolution of the disputed "lawsuit" and "mezz loans"; as well as "Article 2," a November 3, 2019 email from Petitioner to the Kutner defendants disputing that there was a resolution.  (*Id.*)

Because the Kutner defendants would not appear for further proceedings, Petitioner requested that Rabbi Cohen issue an award in connection with the loan to fund the Greystone Lawsuit.  (*Id.* ¶ 17.)  The Kutner defendants did not object to Petitioner's request to Rabbi Cohen.  (*See* ECF No. 36-1, Declaration of Ephraim Kutner, ¶¶ 56-62.)  On March 11, 2020, Rabbi Cohen issued an arbitration award in Brooklyn, New York, which directed:

- All amounts still owed by Greystone Funding under the Greystone Settlement shall be paid directly to SYR [i.e., Rechnitz], to (i) repay the $3,071,009 Greystone Loan provided by SYR to fund the lawsuit against Greystone, (ii) pay the $1,328,967 representing SYR's 30 percent share of the remaining amount recovered in the Greystone Lawsuit after expenses, and (iii) repay other amounts due and owing to SYR on other outstanding loans from SYR to the Kutners.

- SYR may contact Greystone Funding directly, and direct Greystone Funding to make all such payments directly to SYR.

- The Kutners and all entities they control shall cooperate and not interfere with the instructions to Greystone Funding to make all payments under the Greystone Settlement directly to SYR.

- If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the Kutners in connection [with] the Greystone Settlement.

(Compl., Ex. 1, Greystone Arbitration Award.)  This arbitration award was limited to the dispute over the loan to fund the Greystone Lawsuit, and stated that Rabbi Cohen would "issue a separate decision on the other outstanding disputes."  (*Id.*)

## II.  Procedural History

On March 30, 2020, Petitioner initiated this action against both the Kutner defendants and Greystone, seeking to confirm the arbitration award concerning the Greystone Lawsuit settlement pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9, 13, and an order of attachment.  Petitioner initially sought an order to show cause and an *ex parte* order of attachment in aid of arbitration, attaching all amounts to be paid by Greystone to the Kutner defendants under the Greystone Lawsuit settlement, and precluding the payment of such amounts to the Kutner defendants, pending payment in full of all amounts due to Petitioner under the arbitration award.

This court held a hearing by telephone on March 31, 2020, and granted the order to show cause and issued an order of attachment.  (ECF No. 12, Amended Order to Show Cause.)  The order to show cause granted the attachment, and required (1) Petitioner to move for an order confirming the order of attachment by April 7, 2020 and (2) the Kutner defendants to show cause by April 3, 2020 why the relief sought by Petitioner should not be granted.  The parties jointly moved for extensions on April 3.  (ECF No. 14.)  This court denied Petitioner's request for additional time to move for confirmation of attachment based on requirements under New York law, and granted the Kutner defendants until April 21, 2020 to show cause and to

oppose Petitioner's motion.  (ECF Dkt. Order April 3, 2020.)
Petitioner filed the pending motion to confirm the Order of
Attachment in Aid of Arbitration on April 6, 2020.  (ECF No.
16.)

      At 8:52 pm on the day the Kutner defendants' response
was due (April 21, 2020), the Kutner defendants filed another
request for an extension.  (ECF No. 19.)  This court advised
that it was willing to grant the extension on the condition that
the Kutner defendants would not raise any defense that the
extension of time warranted denial of Petitioner's motions, or
vacatur of the attachment.  (ECF Dkt. Order April 22, 2020.)
The Kutner defendants agreed to the condition (ECF No. 20), and
were granted until May 22, 2020 to file their opposition papers
(ECF Dkt. Order April 23, 2020).

      On May 22, 2020, the Kutner defendants filed their
opposition to the petition, and moved to vacate the award on the
grounds that (1) Rabbi Cohen did not have authority to decide
the Greystone Lawsuit dispute, and (2) Rabbi Cohen refused to
hear the Kutner defendants' evidence and arguments.  (ECF No.
36.)  The court allowed Petitioner to respond (ECF Dkt. Order
May 22, 2020), and Petitioner filed his response on May 29, 2020
(ECF No. 41, Rechnitz Reply).

      On April 22, 2020, Greystone filed a motion for
interpleader deposit, seeking an order: (1) permitting Greystone

to deposit the disputed settlement payments in the Registry of
the Court, (2) dismissing Greystone from the action, (3)
prohibiting Petitioner and the Kutner defendants from proceeding
against Greystone with respect to the settlement funds, and (4)
awarding Greystone reasonable attorneys' fees and costs.  (ECF
No. 25.)  The court deferred ruling on Greystone's motion and
directed Greystone to provide billing records in support of its
request for attorneys' fees, and granted Petitioner and the
Kutner defendants an opportunity to respond.  (ECF Dkt. Order
May 1, 2020.)

On May 8, 2020, Greystone filed its supplemental
papers in support of its request for attorneys' fees.  (ECF No.
31.)  The Kutner defendants opposed the motion, arguing that
interpleader was unnecessary, and that Greystone's requested
fees were excessive.  (ECF No. 33.)  Petitioner filed papers in
support of Greystone.  (ECF Nos. 34, 35.)  Greystone filed an
affidavit and memorandum of law in reply, revising their initial
request for fees downward.  (ECF Nos. 39, 40.)

The court held a hearing on June 3, 2020 by
videoconference, at which the parties had the opportunity to
present additional evidence, to hear argument regarding the
pending motions.  Petitioner, the Kutner defendants, and

Greystone all appeared through their counsel.[1]  (*See* Minute
Entry, June 3, 2020.)  At the hearing, the parties presented
arguments regarding each of their respective motions.  The court
asked counsel for Petitioner and counsel for the Kutner
defendants whether they intended to present any additional
evidence, beyond that which was submitted with their papers.
Counsel for the parties confirmed that they did not.

### Legal Standards

### I.   Vacating an Arbitration Award

"When deciding whether the parties agreed to arbitrate
a certain matter . . ., courts generally . . . should apply
ordinary state-law principles that govern the formation of
contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.
938, 944 (1995).  "Any doubts concerning the scope of arbitrable
issues should be resolved in favor of arbitration . . . .  Thus,
as with any other contract, the parties' intentions control, but
those intentions are generously construed as to issues of
arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-
Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quotation and
alteration omitted); *see Volt Info. Scis., Inc. v. Bd. of
Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76

---

[1] Counsel for Greystone was permitted to leave the hearing before it
concluded, after the court indicated it was likely to grant
Greystone's request for dismissal from the case.

(1989) ("[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.") (citation omitted).

The Federal Arbitration Act provides the following grounds upon which a court may vacate an arbitration award: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

## II.  Confirming an Arbitration Award

Under the Federal Arbitration Act, a party to an arbitration may move to confirm the arbitration award before "the United States court in and for the district within which such award was made."  9 U.S.C. § 9.  "Normally, confirmation of

12

an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[.]'") *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)).  Because of the federal policy favoring arbitration, a court should confirm an arbitration award "if there is 'a barely colorable justification for the outcome reached,'" even if it disagrees with the outcome on the merits. *Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir.1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978)).

### III. Attachment in Aid of Arbitration

Federal Rule of Civil Procedure 64 authorizes a federal court to attach property if such a remedy exists under state law.  A party "bears a heavy burden in attempting to establish its right to an attachment . . ., because 'New York attachment statutes are construed strictly against those who see to invoke the remedy.'" *Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, 2009 WL 636952, at *2 (S.D.N.Y. Mar. 6, 2009) (quoting *Buy This, Inc. v. MCI Worldcom, Inc.*, 178 F.Supp.2d 380, 383 (S.D.N.Y. 2001)).

Under New York's Civil Practice Law and Rules ("CPLR"), "on a motion for an order of attachment, or for an

order to confirm an order of attachment, the plaintiff shall show, by affidavit and such other written evidence as may be submitted, [1] that there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  N.Y. C.P.L.R. 6212(a).

Where, as here, a petitioner is seeking an attachment in aid of arbitration, the third ground is governed by CPLR Section 7502 rather than CPLR Section 6201. *See Cty. Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*, 579 N.Y.S.2d 376, 377 (1992) ("This court has held that the standard that governs in a case involving arbitration is whether the award 'may be rendered ineffectual without such provisional relief,' and the standards generally applicable to attachments pursuant to CPLR 6201(3), such as sinister maneuvers or fraudulent conduct, are not required to be shown in an application pursuant to CPLR 7502(c)."). Under Section 7502, a court "may entertain an application for an order of attachment . . . in connection with an arbitration that is pending or that is to be commenced inside or outside this state, . . . but only upon the ground that the award to which the applicant may be entitled may be rendered

ineffectual without such provisional relief." N.Y. C.P.L.R. 7502(c).

### IV.  Interpleader Deposit

The court has authority to grant interpleader relief under 28 U.S.C. § 1335, which provides:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if

(2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335.

"It is well established that the interpleader statute is 'remedial and to be liberally construed,' particularly to prevent races to judgment and the unfairness of multiple and potentially conflicting obligations." *Hapag–Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 151 (2d Cir. 2016) (quoting *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967)).  A party "that commences an interpleader action must allege: (1) that it is in possession of a single fund of value greater than $500; (2) a real and reasonable fear of double liability or vexatious, conflicting claims; and (3) that it has deposited or is depositing the fund with the court."  *New York Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 717 (E.D.N.Y. 2012).

## Discussion

### I.   Greystone's Motion for Interpleader Deposit

This is not a case initiated by a party seeking interpleader relief, but Greystone has nonetheless moved for interpleader relief under 28 U.S.C. § 1335.  Section 1335(a)(1) of the interpleader statute is met because there is diversity between two adverse claimants, Petitioner and the Kutner defendants.  Petitioner is domiciled in California and the Kutner defendants are domiciled in New York. (Compl. ¶¶ 9-12.) Further, Section 1335(a)(2) is met where, as here, the party

"requested this Court to permit it to deposit the relevant funds with the Court." *New York Life*, 841 F. Supp. 2d at 717.

The court stated at the hearing held on June 3, 2020 that Greystone would be permitted to deposit the funds it owes pursuant to the Greystone Lawsuit settlement with the Registry of the Court. Thereafter, as explained at the hearing, the court indicated it would grant Petitioner's request to confirm the arbitration award, and, as set forth below, hereby confirms the award. Consequently, it is no longer necessary for Greystone to deposit the funds with the Registry of the Court. For the reasons herein, the settlement funds for which Greystone concedes it is liable shall be paid directly to Petitioner, in accordance with Rabbi Cohen's arbitration award concerning the Greystone Lawsuit dispute. The court will retain jurisdiction over any dispute regarding the payment by Greystone of settlement funds to Petitioner. Thus, Greystone's request to deposit the funds with the Registry of the Court is moot. *See New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983) ("Normally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the [remaining] claimants; this bifurcation is not mandatory,

17

however, and the entire action may be disposed of at one time.").

The court grants the additional relief sought by Greystone.  Specifically, subject to the retention of jurisdiction stated above, Greystone will be dismissed without prejudice from this action, and Petitioner and the Kutner defendants are enjoined from prosecuting any action or proceeding against Greystone, or its agents and employees, over the funds due under the Greystone Lawsuit settlement.  *See Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 261-62 (3d Cir. 2009) (affirming district court order that interpleader motion was "moot" and "shield[ing] [party] from any liability relating to its failure to resolve the dispute over the interpleaded funds").  On behalf of their clients, counsel for Petitioner and the Kutner defendants consented to this relief on the record at the June 3 hearing.

Greystone also seeks $72,450 in attorneys' fees, and costs in the amount of $263.54 (a total of $72,713.54), in connection with its participation in this case.  Originally, Greystone sought nearly $90,000 in fees and costs, but revised its request downward after the Kutner defendants opposed the request.  (ECF No. 39, Fees Reply Affidavit.)  Greystone's revised request seeks fees at a blended rate of $600 per hour for all attorneys working on the matter.  (*Id.* at 5.)  The

18

actual hourly rates charged by Greystone's attorneys at the law firm Morrison Cohen are between $550 and $975 per hour.  (ECF No. 31, Greystone Affidavit in Support of Fees, at 3-6.)  The attorneys have submitted the original invoices reflecting their contemporaneous time entries.  (ECF No. 31-2, Morrison Cohen Invoices.)

Because the court finds that Greystone was a disinterested third party that properly sought to deposit the disputed funds with the Registry of the Court, and is entitled to reasonable attorneys' fees and costs.  *See Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir.1989) ("Bad faith, fraud and the like are not requisite to such an award.  A disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees."); *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 183 (S.D.N.Y. 2002) ("Attorneys' fees and costs are generally awarded to an innocent and otherwise disinterested stakeholder who has expended time and money participating in a dispute 'not of his own making and the outcome of which has as no impact on him.'").  In determining an appropriate award of fees in any matter, "the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007)

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "The burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

        With respect to the rates charged by the attorneys at Morrison Cohen, Greystone argues that the rates are reasonable for attorneys based in Manhattan.  However, even the revised rate of $600 per hour is higher than the prevailing rates in the Eastern District of New York.  The Second Circuit has held that for litigation in the Eastern District, courts should award the prevailing Eastern District rates unless the applicant "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).  "Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour."  *Martino v. MarineMax Ne.*, LLC, 2019 WL 4170486, at *4 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2019 WL 4167262 (E.D.N.Y. Sept. 3, 2019).  Because Greystone has not made a showing that "a reasonable client would have selected" counsel from the Southern District rather than

the Eastern District "because doing so would likely (not just possibly) produce a substantially better net result," *Simmons*, 475 F.3d at 172, Greystone will be awarded fees in line with the Eastern District rates.

Regarding the number of hours expended, Morrison Cohen's revised request seeks reimbursement for 114.9 attorney hours (plus 11.6 paralegal hours and 6.8 hours from the managing clerk's office), accounting for time from the date Petitioner initiated this action, March 30, 2020, through May 21, 2020.  In general, "[a]n interpleader is limited to 'attorneys' fees and costs incurred in bringing [the] interpleader action.'" *Fidelity Brokerage Servs. LLC v. Caro*, 2011 WL 4801523, at *2 (S.D.N.Y. Oct. 11, 2011) (quoting *Estate of Ellington v. EMI Music Publ'g*, 282 F.Supp.2d 192, 194 (S.D.N.Y.2003)).  Greystone argues that it is entitled to fees for all of the work it did in connection with defending this action because, as a disinterested third party, it should not have had to incur attorneys' fees in a dispute that was not of its own making.  In most of the cases relied upon by Greystone to support its argument, however, the reason parties were able to recover most or all of their fees was because the parties did not participate in the case beyond filing an interpleader complaint.  Where the parties did more than was required, fees were not awarded for their additional involvement.  *See Hausler v. JP Morgan Chase*

*Bank, N.A.*, 127 F. Supp. 3d 17, 59 (S.D.N.Y. 2015) ("[T]o the extent [the party] may have crossed the line beyond that of a neutral party disinterested in the outcome of the parties' disputes . . . recovery of attorney's fees and costs may be unwarranted as to charges the Court finds to have stemmed from excessive or needless litigation.").

The court recognizes that counsel for Greystone appeared at the telephone conference on March 31, 2020, filed its motion for interpleader on April 22, 2020, and appeared at the hearing held by videoconference on June 3, 2020.  Greystone will be compensated for one attorney's appearance at the two court proceedings, and for reasonable time to bring its interpleader motion.  Had Greystone brought its interpleader motion sooner, it likely would not have needed to expend more than 100 hours of attorney time on this case.  Greystone cannot argue on the one hand that it was a disinterested stakeholder, while on the other hand claim that it meaningfully participated in the litigation and incurred more than 100 hours in attorneys' fees.

This court has discretion to fashion a reasonable award of attorneys' fees.  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve

22

auditing perfection."). Recent cases awarding fees and costs for interpleader complaints brought in the Eastern District are sparse. Cases doing so using Southern District rates have ordered awards ranging from approximately $10,000 to $13,000. *See Solar Spectrum LLC v. AEC Yield Capital LLC*, 2019 WL 5381798, at *11 (S.D.N.Y. Oct. 22, 2019) (awarding $13,360 in fees and costs instead of the requested $63,346); *Estate of Heiser v. Bank of Baroda*, 2013 WL 4780061, at *5 (S.D.N.Y. July 17, 2013) (awarding $10,438.69 in fees and costs instead of the requested $34,795.64, and holding that "35 hours on researching and drafting the interpleader . . . seems excessive in light of the type and amount of work required"); *Estate of Ellington*, 282 F. Supp. 2d at 195 (awarding $10,000 in fees and costs where party's participation "primarily involved two conferences with this Court and two settlement conferences with the Magistrate Judge, drafting the complaint, reviewing and responding to correspondence, and negotiating and commenting on the final discharge").

Using Eastern District rates, the court finds that an appropriate fee award in this case is $12,800, plus $263.54 in costs (for a total of $13,063.54). This fee award derives from the higher end of the prevailing rates in the Eastern District ($400 per hour) and the amount of time Greystone would reasonably have expended appearing at two conferences (both

conducted remotely) and preparing its interpleader motion: two hours for the conferences, and 30 hours for the motion, for a total of 32 hours.  Though this award is well below Greystone's request, the court believes it is fair, given that it is close to the range of awards that have been recently ordered by courts using the higher Southern District rates.  To the extent the fee award and hourly rate are arguably high despite using the lower Eastern District rates, the court recognizes that there were many complexities to this case, including a unique procedural posture and contradictory factual accounts, that likely made the interpleader motion more challenging than most.

## II.  The Kutner Defendants' Motion to Vacate the Arbitration Award

The Federal Arbitration Act provides four grounds upon which a court can vacate an arbitration award: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

definite award upon the subject matter submitted was not made."
9 U.S.C. § 10(a).

The court finds no evidence in the record to vacate
the arbitration award on any of the foregoing bases.  The Kutner
defendants, however, focus on the fourth ground, and argue that
the award should be vacated because Rabbi Cohen did not have
authority to decide the Greystone Lawsuit dispute.  (Opp. at 6-
16.)  The Kutner defendants also raise the third ground, and
argue that Rabbi Cohen committed misconduct by failing to hear
all of their evidence and arguments.  (*Id.* at 17-18.)

The Kutner defendants have not raised the first two
grounds for vacatur under the Federal Arbitration Act, and the
court finds that such grounds are not present.  There is no
evidence in the record that the arbitration "award was procured
by corruption, fraud, or undue means."  Nor is there any
evidence that Rabbi Cohen exhibited "evident partiality or
corruption."  Indeed, it is undisputed that it was the Kutner
defendants who recommended Rabbi Cohen for the resolution of the
parties' disputes (Rechnitz Decl. ¶ 5), and the record reflects
his impartiality.

Regarding the fourth factor, the scope of Rabbi
Cohen's authority, the Kutner defendants argue that the plain
language of the arbitration agreement signed by the parties
limited the matter before Rabbi Cohen to a single "dispute."

25

(Opp. at 8-9; *see* Compl., Ex. 2, Arbitration Agreement.)  The
Kutner defendants also submitted email evidence showing that
Petitioner and the Kutner defendants were involved in a dispute
related to mezzanine loans funded by Petitioner, which,
according to the Kutner defendants, is the only dispute Rabbi
Cohen was supposed to adjudicate.  (*See* Opp. at 9-13.)  The
Kutner defendants further argue that the parties to the original
agreement regarding the loan to fund the Greystone Lawsuit were
two LLCs run by Petitioner and the Kutner defendants, but the
arbitration agreement was signed by the parties in their
individual capacities.  (*Id.* at 9.)  Lastly, the Kutner
defendants argue that the matter of the Greystone Lawsuit could
not have been arbitrated in August 2018, because the lawsuit was
not settled until 2019, and thus no dispute over the funds could
have existed at the time of the hearing.  (*Id.* at 14-15.)

　　　　In response, Petitioner submitted an affidavit from
Victor Lipnitsky, a neutral third party who served as Rabbi
Cohen's forensic expert, who noted that the dispute before Rabbi
Cohen pertained to "several financial issues" and various "loans
or business transactions between the parties," including the
loan to fund the Greystone Lawsuit.  (ECF No. 42-1, Declaration
of Victor Lipnitsky, ¶¶ 7, 9; *see* Rechnitz Reply at 11.)
Petitioner also relies on an affidavit filed by David Weldler,
the CEO of one of the companies Petitioner owns.  (ECF No. 43

("Weldler Decl.").)  The affidavit, which is supported by email evidence, declares that the Greystone Lawsuit "was one of the central issues that the parties were fighting about" when they agreed to arbitrate, and that much of the arbitration focused on evidence related to the Greystone Lawsuit.  (*Id.* at 7-10.) Petitioner next argues that an email sent to Petitioner from Ephraim Kutner, on December 2, 2018, acknowledged that the dispute over the Greystone Lawsuit was discussed at the arbitration hearing.  (Rechnitz Reply at 13.)  Finally, Petitioner points to the fact that the arbitration award decided the dispute over the Greystone Lawsuit, establishing that Rabbi Cohen himself understood that the Kutner defendants had submitted the dispute to arbitration.  (*Id.* at 14.)

In considering a challenge to an arbitration award, "'[t]he principal question for the reviewing court is whether the arbitrator's award draws its essence" from the agreement to arbitrate, 'since the arbitrator is not free merely to dispense his own brand of industrial justice.'"  *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (quoting *187 Concourse Assocs. v. Fishma*n, 399 F.3d 524, 527 (2d Cir.2005)).  In determining which issues were submitted for arbitration, "the parties' intentions control," but where the parties agreed to arbitration on at least one issue, "those intentions are generously construed as to issues of

arbitrability." *Mitsubishi*, 473 U.S. at 626.  "[I]ssues will be
deemed arbitrable unless 'it is clear that the arbitration
clause has not included' them." *First Options*, 514 U.S. at 945
(quoting G. Wilner, 1 Domke on Commercial Arbitration § 12:02,
p. 156 (rev. ed. Supp.1993)).  Under principles of New York
contract law, the court should first look to the arbitration
agreement, and then to extrinsic evidence if the agreement is
ambiguous.  *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d
562, 569 (2002).

        The arbitration agreement in this case is somewhat
unique because of its brevity.  It is clear that the parties
expected Rabbi Cohen "to adjudicate a dispute," and they "agreed
to accept [his] decision."  (Compl., Ex. 2, Arbitration
Agreement.)  It is not clear from the face of the document,
however, that the "dispute" to be resolved by Rabbi Cohen was
limited to the mezzanine loans, or whether the "dispute" was the
full scope of the financial disagreements between Petitioner and
the Kutner defendants, including with respect to the Greystone
Lawsuit.

        After initially arguing to Rabbi Cohen that they
agreed to mediate but did not believe they had agreed to
arbitrate in August 2018, the Kutner defendants now concede that
the parties agreed to arbitrate.  When parties agree to
arbitrate, there is a presumption that they agreed to submit

28

their various live disputes to arbitration.  *See First Options*,
514 U.S. at 943; *Mitsubishi*, 473 U.S. at 626.  Moreover,
"[w]here an arbitration clause is broad, as here, arbitrators
have the discretion to order remedies they determine
appropriate, so long as they do not exceed the power granted to
them by the contract itself."  *Banco de Seguros del Estado v.
Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003).
Ultimately, because the Kutner defendants are moving to vacate
the award, they have "the burden of proof, and the showing
required to avoid confirmation is very high."  *Ecopetrol S.A. v.
Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d 327, 340 (S.D.N.Y.
2014) (quoting *D.H. Blair*, 462 F.3d at 110).

        The evidence proffered by the Kutner defendants does
not satisfy their burden to show that the parties' agreement to
arbitrate was limited to the mezzanine loans.  Even though the
arbitration agreement referred to a "dispute," the subsequent
letter from the Kutner defendants' own advocate twice used the
singular "dispute" to refer to a broader universe of the
parties' ongoing disagreements, and in so doing, he attached an
email from Ephraim Kutner to Petitioner that referenced both the
Greystone Lawsuit and the mezzanine loans.  (*See* Rechnitz Decl.,
Ex. B, Letter from Bechhofer (Second).)  Moreover, the fact that
the arbitration agreement was signed by the parties in their
individual capacities suggests that it was intended to be broad,

rather than limited to the joint mezzanine loan business.  The parties signed the arbitration agreement both individually and in their capacitates as partners in Harborview Capital LLC, which was the mezzanine loan business.  (Compl., Ex. 2, Arbitration Agreement.)  Had the parties meant for the agreement to be limited to the mezzanine loan business, signing individually would have been unnecessary.  And although the Greystone Lawsuit was not settled until 2019, Petitioner provided email evidence showing that there was a dispute over the Greystone Lawsuit as early as February 2018.  (*See* Weldler Decl. ¶ 11, quoting Feb. 25, 2018 email from Ephraim Kutner to Petitioner ("You insisted upon investing in my case and lawsuit and you were the one who came up with attorneys we should use and the strategies we were going to implement.  You decided to invest in my case on your own volition.").)

It is also significant that the Kutner defendants initially objected to the proceedings before Rabbi Cohen on the ground that they thought it was only supposed to be a mediation, but now argue that it was an arbitration limited to a single issue.  The evidence in the record reflects that Petitioner presented evidence at the hearing of loans he extended to the Kutner defendants in excess of $11 million that have not been repaid.  (Rechnitz Decl. ¶ 7.)  At the June 3, 2020 hearing before this court, counsel for the Kutner defendants admitted

that they did not raise any objections to Petitioner's evidence at the arbitration hearing of other loans, nor did they object that Rabbi Cohen exceeded his authority until they were sued in federal court.  Counsel for the Kutner defendants argued that the Kutners' chosen rabbinic advocate, Rabbi Bechhofer, is not a lawyer and would not have known to raise such an objection.  The court is not persuaded that a lay person would not have objected if an arbitrator heard evidence that exceeded the scope of the parties' dispute.  The evidence submitted by the parties establishes that the Greystone Lawsuit and other disputes were discussed, and evidence was presented, both at the arbitration hearing and immediately after the hearing.  (*See* Rechnitz Decl., Ex. B, Letter from Bechhofer (Second).)

Rabbi Bechhofer initially objected to Rabbi Cohen's proceedings, but he did so on the ground that the Kutner defendants thought they had agreed only to mediate.  (*Id.*) Rabbi Cohen rejected that contention.  (Compl., Ex. 4, Letter from Rabbi Cohen.)  The Kutner defendants have subsequently changed their position and now concede they agreed to arbitration.  The contemporaneous evidence establishes that the evidence regarding the Greystone Lawsuit was presented at the arbitration hearing by Petitioner without objection as to scope from the Kutner defendants.  Accordingly, the Kutner defendants have failed to satisfy their burden to establish that Rabbi

Cohen exceeded his authority and that the arbitration award should be vacated.

The Kutner defendants also argue that Rabbi Cohen's award must be vacated because "it was rendered without affording the Kutners the ability to present evidence or arguments." (Opp. at 16.)  Obtaining vacatur of an arbitration award based on the evidence the arbitrator decided to accept requires a very high showing, because arbitrators' admissibility determinations are entitled to significant deference. *See British Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 517 (S.D.N.Y. 2000) ("arbitrators are afforded broad discretion in determining" how much evidence to accept so long as they "give each of the parties to the dispute an adequate opportunity to present its evidence and argument").

The record reflects that, immediately following the arbitration hearing, the Kutner defendants sought a second hearing at which they could "present all of [their] evidence, including documents, recordings and witnesses who will fly in to give their testimony."  (Compl., Ex. 3, Letter from Bechhofer.) Rabbi Cohen welcomed the opportunity to hear their evidence before he issued any awards.  (*See* Compl., Ex. 4, Letter from Rabbi Cohen ("I have already assured the Kutners that we shall all get together before a final decision is rendered.").) Thereafter, despite Rabbi Cohen's attempt to schedule another

hearing, it is not disputed by the Kutner defendants that they did not cooperate with Rabbi Cohen's further efforts to hear their evidence.  A party cannot argue that an arbitration award should be vacated because the hearing was unfair after the party has refused to cooperate with the arbitrator's efforts to conduct further proceedings to provide an opportunity for the party to submit evidence.  *See Three S Delaware, Inc. v. DataQuick Info. Sys.*, Inc., 492 F.3d 520, 531 (4th Cir. 2007) (arbitrator "did not commit misconduct" by declining to accept further evidence where party "would have had an ample opportunity to present its evidence if its owner had not insisted on abandoning the arbitration hearing").

The Kutner defendants, therefore, have not shown that Rabbi Cohen committed misconduct by not hearing evidence that the Kutner defendants refused to present.  On the contrary, Rabbi Cohen indicated that he wanted to provide the Kutner defendants a fair opportunity to present their evidence, but they declined his invitation to do so.

A court should confirm an arbitration award "if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp.*, 954 F.2d at 797 (quoting *Andros Compania Maritima*, 579 F.2d at 704); *see also D.H. Blair*, 462 F.3d at 110.  Here, Rabbi Cohen's arbitration award with respect to the loan to fund the Greystone Lawsuit was justified and

33

reasonable based on the record before the court.  Rabbi Cohen conducted an arbitration hearing at which both sides were given ample opportunity to present documents and witnesses in support of their respective positions, and he offered the Kutner defendants another opportunity to appear and present evidence. When they failed to do so, Rabbi Cohen issued an arbitration award consistent with the evidence before him and the parties' agreement regarding Petitioner's loan to fund the Kutner defendants' Greystone Lawsuit.  Accordingly, the motion to vacate the arbitration award is denied and the award is confirmed.

### III. Petitioner's Motion to Confirm an Order of Attachment in Aid of Arbitration

Petitioner initially commenced this action seeking confirmation of the arbitration award, an attachment, and ultimately, a permanent order of attachment in aid of arbitration.

Because the court confirms the arbitration award, Greystone is ordered to pay the Greystone Lawsuit settlement funds to Petitioner in accordance with that award, which directed:

> All amounts still owed by Greystone Funding shall be paid directly to [Petitioner], including the $3,071,009 provided by [Petitioner], plus the $1,328,967 representing [Petitioner's] 30 percent share of the remaining amount recovered in that lawsuit.  Any additional amounts from that lawsuit shall be paid to [Petitioner] for repayment of

> amounts owing to [Petitioner] relating to other outstanding
> amounts.  [Petitioner] may contact Greystone Funding
> directly and direct Greystone Funding to make all payments
> directly to [Petitioner].

(Compl., Ex. 1, Greystone Arbitration Award, at 2.)

The arbitration award grants Petitioner all funds from the Greystone Lawsuit settlement, including funds above the amount required by the initial terms of Petitioner's loan to fund the Greystone Lawsuit.  The award of all funds from the Greystone Lawsuit settlement resulted from evidence presented at the arbitration hearing of other disputes between Petitioner and the Kutner defendants, which Rabbi Cohen stated would be explained in a separate arbitration decision.  (*See id.* at 2 ("[T]his is my decision regarding the Greys[t]one Lawsuit dispute.  I will issue a separate decision on the other outstanding disputes.").)

Petitioner seeks an order of attachment over all of the settlement funds.  To obtain a permanent order of attachment, Petitioner must show: (1) there is a cause of action, (2) it is probable Petitioner will succeed on the merits, (3) the award may be rendered ineffectual without an attachment, and (4) the amount demanded from the Kutner defendants exceeds all counterclaims known to Petitioner.  *See* N.Y. C.P.L.R. 6212(a); *Cty. Natwest Sec. Corp. USA*, 579 N.Y.S.2d at 377.  Petitioner has established all four elements.

First, there is a cause of action—i.e., the arbitration pending between Petitioner and the Kutner defendants.  "Section 7502(c) of the N.Y. C.P.L.R. provides that 'arbitration shall be deemed an action for [the] purpose' of Article 62."  *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, 2011 WL 6957595, at *4 (S.D.N.Y. Dec. 28, 2011).  The arbitration before Rabbi Cohen remains ongoing, as there are still outstanding disputes between the parties for which Rabbi Cohen will issue additional awards, and over which he retained jurisdiction.

Second, Petitioner has shown a probability of success on the merits.  In order to show that it is "probable" that Petitioner will succeed, "there must be something in the proof stronger than the mere prima facie case that could satisfy as a pleading."  *Mishcon de Reya*, 2011 WL 6957595, at *4 (quoting David D. Siegel, N.Y. PRAC. § 316 (4th ed. 2005).  There is supporting evidence in the record of Petitioner's likelihood of success: Rabbi Cohen already found that Petitioner is entitled to the Greystone Lawsuit settlement funds to resolve both the Greystone Lawsuit dispute and to repay Petitioner for "other outstanding amounts" owed to Petitioner by the Kutner defendants.

Third, the court must consider whether the award may be rendered ineffectual without attachment.  To satisfy this

element, Petitioner "must do more than show that attachment would be 'helpful.'" *Mishcon de Reya*, 2011 WL 6957595, at *8 (S.D.N.Y. Dec. 28, 2011) (citing *Founders Ins. Co. v. Everest Nat'l Ins. Co.*, 839 N.Y.S.2d 474 (N.Y. 1st Dep't 2007)). "In making this determination, the Court may consider factors such as the respondent's history of paying creditors, . . . as well as a stated or indicated intention to dispose of assets that could be used to satisfy a future judgment." *Id.* (citing *Habitations Ltd. v. BKL Realty Sales Corp.*, 554 N.Y.S.2d 117 (N.Y. 1st Dep't 1990) and *Plenty v. Randell*, 1995 WL 694661 (S.D.N.Y. Nov.22, 1995)).

Petitioner represents that the Kutner defendants have "admitted to Petitioner on several occasions" that "the Kutners did not have the money to pay him." (ECF No. 16, Motion to Confirm, at 9.) In addition, Ephraim Kutner's own declaration acknowledged that he told Petitioner that he did not have $3 million available to pay as one lump sum to resolve their disputes. (Kutner Decl. ¶ 76.) Generally, "[i]t is sufficient that the respondent's assets are dwindling or are being encumbered or moved about, regardless of the respondent's motives." *Moquinon, Ltd. v. Gliklad*, 58 N.Y.S.3d 874, 2017 WL 1482163, at *4 (N.Y. Sup. 2017). Thus, the arbitration award would be frustrated if the funds from the Greystone Lawsuit settlement are not attached.

37

Fourth, the amount demanded by Petitioner must be greater than known counterclaims.  The court is not aware of any counterclaims by the Kutner defendants pending against Petitioner, nor does the court believe any such claims could be brought in good faith.  Moreover, the Kutner defendants have not advised of any counterclaims pending against Petitioner.

Accordingly, Petitioner has made the showing required to confirm the order of attachment in aid of arbitration under New York law.

## Conclusion

For the foregoing reasons, as well as those stated on the record at the hearing held on June 3, 2020, the court GRANTS Petitioner's motion to confirm the arbitration award and the order of attachment in aid of arbitration, DENIES the Kutner defendants' motion to vacate the underlying arbitration award, and GRANTS IN PART Greystone's motion for interpleader deposit.

Greystone is dismissed from this action, except to the extent the court may be called upon to enforce the payment of the Greystone Lawsuit settlement to Petitioner.  Petitioner and the Kutner defendants have agreed that they may not commence any new proceedings against Greystone for payment of the Greystone Lawsuit settlement to Petitioner, except to enforce the same. The parties shall hold Greystone harmless with respect to the funds from the Greystone Lawsuit settlement.  Greystone is also

awarded $13,063.54 in attorneys' fees and costs, which it may deduct from the Greystone Lawsuit settlement funds.  Because the court has confirmed the arbitration award concerning the Greystone Lawsuit, it is no longer necessary for Greystone to deposit the funds with the Registry of the Court.  Instead, Greystone is ordered to pay the funds directly to Petitioner in accordance with the arbitration award, as set forth above.

Because the arbitration before Rabbi Cohen remains ongoing, the parties are encouraged to submit any future disputes to him for resolution.  This court, however, will retain jurisdiction over enforcement of this Order.

The Clerk of Court is respectfully directed to terminate Greystone Funding Corp. as a defendant, to enter judgment in favor of Petitioner, and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          June 8, 2020

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge